# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THOMAS P. JASIN | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-748 |
| | : | |
| MICHAEL, BEST AND FRIEDRICH, LLP. | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

**STENGEL, J.**                                                            November 2, 2009

Before the Court is a motion for summary judgment filed by defendant Michael, Best, and Friedrich, LLP ("Michael Best"). The plaintiff, Thomas P. Jasin, has filed suit alleging professional malpractice in connection with a 1992 criminal trial during which he was represented by an attorney from Michael Best. Mr. Jasin was found guilty of conspiracy to violate an arms embargo against South Africa and sentenced to two years in prison; however, his habeas corpus petition claiming ineffective assistance of counsel was later granted. Michael Best claims Mr. Jasin's suit is barred by res judicata because his case has already been dismissed in Wisconsin state court on statute of limitations grounds.

## I. BACKGROUND

### A. The Criminal Conviction and Proceedings

During the 1980's, Thomas P. Jasin was a high-ranking officer of ISC

Technologies ("ISCT"), a Lancaster, Pennsylvania based company that dealt in military equipment and systems for both domestic and international customers. United States v. Jasin, 280 F.3d 355, 357 (3d Cir. 2002).¹ While employed with ISCT, Mr. Jasin managed the Striker missile project, and was involved in the sale of missiles containing both South African and American parts to China. Id. On October 30, 1991, a federal grand jury in the Eastern District of Pennsylvania indicted Mr. Jasin and numerous other ISCT defendants for conspiring with South African nationals and corporations to transfer, by way of front companies, millions of dollars worth of weapons and components to South Africa in violation of the Arms Export Control Act, 22 U.S.C. § 2778, the Comprehensive Anti Apartheid Act, 22 U.S.C. §§ 5501 *et seq* and various provisions of the federal money laundering statutes. Id. Prior to his indictment, Mr. Jasin met with Garr Steiner, an attorney from Wisconsin firm Michael Best, who agreed to represent Mr. Jasin in any criminal investigation or prosecution arising from his employment with ISCT. Pl.'s Mem. In Opp'n to Def.'s Mot. For Summ. J. at 4.

Mr. Jasin, represented by Mr. Steiner, faced two charges at a trial held before the Honorable Jan DuBois in late 1992: Count one charged him with participating in a conspiracy to circumvent the arms embargo against South Africa; and Count twenty-four charged him with violating the Arms Export Control Act for exporting data and

---

¹ The Third Circuit opinion cited here deals with Mr. Jasin's motion for a new trial based on newly discovered evidence. Although Mr. Jasin's professional malpractice claim is not discussed in this opinion, it is appropriately cited for the factual background it sets forth.

technology to South Africa without authorization from the United States Department of State. Id. On December 10, 1992, the jury found Mr. Jasin guilty of Count one and acquitted him on Count twenty-four. Id. at 358. In July of 1993, Mr. Jasin and Mr. Steiner terminated their attorney-client relationship and Mr. Jasin obtained new counsel for sentencing. In 1998, the court sentenced Mr. Jasin to 24 months in prison. Id.

This is only a piece of Mr. Jasin's legal saga. In the months following the verdict, he filed post-trial motions for a new trial and for a judgment of acquittal, both of which were denied. Def.'s Mot. For Summ. J. Ex. I (4). In 1997, he filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 based upon newly discovered evidence. United States v. Jasin, 280 F.3d at 356. The Court denied that motion in 2000, and Mr. Jasin appealed to the Third Circuit, which affirmed the District Court's order. See id.

On February 12, 2001, Mr. Jasin filed a § 2255 motion to vacate his sentence based on Mr. Steiner's ineffective assistance of counsel at trial. Def.'s Mot. For Summ. J. Ex. I (11). In August of 2002, Judge DuBois granted his motion in part and denied it in part, finding that Mr. Steiner was objectively unreasonable "in his failure to investigate, interview, and call at trial witnesses with evidence in support of [Mr. Jasin's] good faith defense as requested by [Mr. Jasin]" and that this unreasonable failure prejudiced Mr. Jasin's good faith defense. United States v. Jasin, 215 F. Supp. 2d 552, 560, 567 (E.D. Pa. 2002). He vacated Mr. Jasin's conviction on this ground. Id. at 594.

Because the factual findings in the above decision are not all necessary to the disposition of this motion, they will be cited sparingly. In relevant part, the court found that Mr. Jasin requested both orally and in writing that Mr. Steiner interview and call as witnesses at trial certain people—including two individuals who worked for a company that had cooperated with ISCT in the testing of certain missiles; James Guerin, the leader of the ISCT conspiracy; and various expert witnesses including John Gencavage, a handwriting expert—who would corroborate Mr. Jasin's claim that he believed in good faith he was acting in accordance with relevant federal regulations. Id. at 561–62. The court found that "trial counsel conducted no pre-trial investigation and interviewed neither the witnesses defendant asked him to interview nor the witnesses he actually presented" and noted that this "dereliction" was explained in part by the fact "disclosed to defendant at the beginning of trial, that trial counsel had never tried a criminal case before this one." Id. at 566.

**B.     The Subsequent Civil Action**

On January 2 and January 6, 2004 respectively, Mr. Jasin filed a Complaint and an Amended Complaint in the United States District Court for the Eastern District of Wisconsin against Michael Best. Def.'s Mot. For Summ. J. Ex. A, B. The Wisconsin federal court dismissed Mr. Jasin's action for lack of complete diversity, and he then re-filed in the Wisconsin Circuit Court for Waukesha County. Id. Ex. C, D. In his Complaint, he alleged that Mr. Steiner, who at that point was deceased, "lied to [Mr.

Jasin] before, during, and after trial about his attempts to obtain the testimony of the important defense witnesses identified by Mr. Jasin" and that Mr. Steiner never contacted those proposed witnesses and falsely assured Mr. Jasin that he had. Id. Ex. D at ¶ 31. Count I of his complaint alleged professional malpractice based on Mr. Steiner's negligence, his "actions in failing to properly investigate and prepare" for the case, and his "fraudulently concealing his malpractice." Id. at ¶¶ 41–48. Count II alleged breach of contract for Steiner's failure to diligently represent Mr. Jasin. Id. at ¶¶ 49–58.

From the beginning of Mr. Jasin's Wisconsin action, Michael Best's statute of limitations defense was of central importance. Mr. Jasin first filed a motion for partial summary judgment, admitting that the Pennsylvania two year statute of limitations for professional malpractice applied. Def.'s Mot. For Summ. J. Ex. F at 28. However, he also argued the Court should adopt and apply the exoneration rule, whereby the statute of limitations on a malpractice claim does not begin to run until the date of exoneration—in his case, the date on which Judge DuBois vacated Mr. Jasin's conviction in August 2002. Def.'s Mot. For Summ. J. Ex. F at 22–23. He also claimed that because Mr. Steiner concealed the nature and extent of his misconduct in representing Mr. Jasin, Michael Best was equitably estopped from asserting a statute of limitations defense. Id. Ex. F at 24.

Although Mr. Jasin argued for the application of the exoneration rule in determining the accrual date for his action, it was, at the time of filing, a matter of first impression under Wisconsin law when the statute of limitations period for professional

malpractice begins to run. See id. Ex. Q. Had the Wisconsin court adopted and applied the exoneration rule as Mr. Jasin argued it should, his malpractice action would have been timely since his § 2255 petition was granted in 2002 and his Wisconsin action was filed less than two years later. Id. Ex. F. at 30.

Michael Best also filed a motion for summary judgment in the action, arguing that under applicable choice of law rules, the accrual date for Mr. Jasin's malpractice claim was governed not by Wisconsin law but by Pennsylvania law, under which it is settled that the statute of limitations on criminal representation malpractice claims begins to run upon termination of the attorney client relationship even if a defendant has not yet obtained post-conviction relief. Id. Ex. H at 8–9; see Bailey v. Tucker, 533 Pa. 237, 253, 621 A.2d 108, 116 (Pa. 1998). Therefore, while Mr. Jasin's action was wholly foreclosed in Pennsylvania since he did not file suit before the statute of limitations expired in 1995, his suit could have gone forward in Wisconsin depending on the court's analysis of the accrual issue.

On October 5, 2006, the Waukesha County Circuit Court granted Michael Best's motion for summary judgment. See id. Ex. Q. It undertook an extensive analysis of the conflict between Wisconsin law and Pennsylvania law presented in Mr. Jasin's case. First, it concluded that the foreign (i.e. Pennsylvania) two year statute of limitations for professional malpractice applied because the claim was a "foreign cause of action." Id. at 9. It then determined that although the Pennsylvania statute of limitations applied,

Wisconsin's tolling principles determined when the action accrued. Id. at 4–8, 10–11. Recognizing that Wisconsin law was silent on the issue of accrual rules, the court adopted the Pennsylvania approach requiring filing upon termination of the attorney-client relationship, reasoning that it better protected a plaintiff's right to relief and an attorney's exposure to liability than the exoneration approach. Id. at 14. It found Mr. Jasin's claim was barred because it had not been filed within two years of the accrual date. Id. at 15.

Mr. Jasin appealed the Circuit Court's decision to the Wisconsin Court of Appeals. Jasin v. Michael Best & Friedrich, 2007 WL 4179837 (Wis. Ct. App. 2007). The court affirmed the decision but found that Pennsylvania, not Wisconsin accrual rules determined when the statute of limitations began to run on Mr. Jasin's claim. Id. at *2. However, because Wisconsin had adopted Pennsylvania's approach, the outcome for Mr. Jasin remained the same: expiration of the statute of limitations. The Court of Appeals also addressed Mr. Jasin's equitable estoppel argument, which was not analyzed at length by the Circuit Court. It stated "[t]he circuit court's decision does not address this issue. Jasin should have brought the omission of the issue to the attention of the circuit court and the failure to do so constitutes a waiver of the right to have such an issue considered on appeal." Id. at *3. Mr. Jasin filed a motion for reconsideration of the Circuit Court's ruling on the equitable estoppel issue, and the Court denied it, reasoning that "where, as here, a myriad of theories are presented to the circuit court and the circuit court fails to explicitly address a particular theory, it is reasonable to require a party to bring the

omission to the circuit's court's attention for a definitive ruling. . . In any event, our opinion addresses the result even if an implicit determination is gleaned from the record." Def.'s Mot. For Summ. J., Ex. S.  On February 21, 2008, the Supreme Court of Wisconsin denied Mr. Jasin's petition for review of the Court of Appeals decision.  Jasin v. Michael Best & Friedrich, 307 Wis.2d 294, 746 N.W.2d 812 (Table) (Wis. 2008).

### C. The Current Action

On January 22, 2009, Mr. Jasin filed an action in the Court of Common Pleas of Philadelphia County against Michael Best, setting forth the same facts in the Wisconsin action and alleging one count of professional malpractice.  Michael Best removed to this court on the basis of diversity jurisdiction[2] on February 19, 2009, and has now filed a motion for summary judgment alleging that Mr. Jasin's claim is barred by res judicata and by the statute of limitations.  Mr. Jasin claims that (1) Pennsylvania law applies to determine the res judicata effect of the prior dismissal on statute of limitations grounds, and Pennsylvania law does not treat a dismissal on statute of limitations grounds as one on the merits; (2) even if Wisconsin law does apply, a dismissal on statute of limitations grounds is not a dismissal on the merits under Wisconsin law; and (3) the Wisconsin courts' decisions are not entitled to full faith and credit because they denied Mr. Jasin due process of law.

---

[2] The Wisconsin action was dismissed pursuant to the parties' stipulation and voluntary dismissal before the issue of complete diversity was litigated.  In its notice of removal in this action, the Defendants, in supplying the names and states of citizenship of each Michael Best partner, have satisfied the Court that complete diversity exists.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it could affect the outcome of the case under the governing law. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332; Mr. Jasin is a citizen of Pennsylvania and each partner in Michael Best is a citizen of a state other than Pennsylvania.

#### A. Effect of Wisconsin Judgment

Res judicata, or claim preclusion, ensures that final judgments remain binding on the parties and prevents subsequent investigation of issues already litigated. Federal

courts are bound by the Full Faith and Credit Statute, 28 U.S.C. § 1738 [3], which requires that the res judicata effect of a prior state court judgment is determined by the law of the state in which it was rendered. See Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 928 (3d. Cir. 1991); Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).

In Wisconsin, a judgment is barred by res judicata, or claim preclusion, when three factors are present: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." Sopha v. Owens-Corning Fiberglas Corp., 230 Wis.2d 212, 233–234 (Wis. 1999) (citing Northern States Power Co. v. Bugher, 189 Wis.2d 541, 551 (Wis. 1995)).

Despite the well settled rule in Migra, Mr. Jasin contends that it is Pennsylvania law and not Wisconsin law that determines the preclusive effect of the Wisconsin judgment. See Pl.'s Resp. To Def.'s Mot. For Summ. J., 16–20. He cites the Third Circuit's decision in Hartmann v. Time, Inc., 166 F.2d 127, 137–38 (3d Cir. 1947) for the

___

[3] § 1738 reads in pertinent part: "The . . . judicial proceedings of any court of any. . . state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

proposition that Pennsylvania law applies to determine the res judicata effect of another state's dismissal on statute of limitations grounds. Mr. Jasin argues that under Pennsylvania law, a dismissal on statute of limitations grounds is not a decision on the merits, and that as a result, this Court should not treat the Wisconsin judgment as one on the merits. See id.

This element of Mr. Jasin's argument is unpersuasive. The Third Circuit's decision in Hartmann was issued years before Migra, a case upon which the Third Circuit and other courts in this District have continued to rely in assessing the preclusive affect of state court judgments.[4] The question phrased in Hartmann, "whether the plea of res judicata, asserted in the Court below, must be governed by the law of the State of the forum or by federal procedural law", indicates that the now settled rule set forth in Migra was not yet on the court's horizon when it issued its decision. See Hartmann, 166 F.2d 137–38. Federal procedural law has long ceased to be a consideration when a federal court determines the preclusive effect of a state court judgment. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("[§ 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered. 'It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.

---

[4] See e.g., James v. Heritage Valley Federal Credit Union, 197 Fed.Appx. 102, 105 (3d Cir. 2006); Balthazar v. Atlantic City Medical Center, 137 Fed. Appx. 482, 489 (3d Cir. 2005); Walker v. Horn, 385 F.3d 321, 337 (3d Cir.2004); Wade v. City of Pittsburgh, 765 F.2d 405, 408 (3d Cir. 1985) (applying Migra in the context of § 1983 actions initiated in state court).

Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'").

The unique problem presented here is that, because the Wisconsin courts relied on the Pennsylvania and not the Wisconsin statute of limitations in finding Mr. Jasin's claim time-barred, there appears to be a possibility that this Court need not consider whether the Wisconsin judgment was entitled to res judicata effect in Wisconsin. Both the Circuit Court and the Court of Appeals in Wisconsin agreed that under Wisconsin's borrowing statute, the applicable statute of limitations for Mr. Jasin's claim was the statute of limitations in Pennsylvania. See Def.'s Mot. For Summ. J., Ex. Q, Ex R; WIS. STAT. § 893.07(1). While the circuit court found that Wisconsin tolling rules could be applied in conjunction with Pennsylvania's two year statute of limitations, the court of appeals reversed this decision, finding that "Central Mutual Insurance Co. v. H.O., Inc., 63 Wis. 2d 54, 55-56 (1974) controls here and requires that we apply Pennsylvania law to determine when the Pennsylvania statutes of limitation began to run on Jasin's malpractice claims." Jasin v. Michael Best & Friedrich, 2007 WL 4179837 at *2 (Wis. Ct. App. 2007).

Both Wisconsin courts agreed that under Pennsylvania law, Mr. Jasin's claim was barred. See Def.'s Mot. For Summ. J., Ex. Q at 4 ("Pennsylvania has a two year statute of limitations on a legal malpractice complaint such as this one. Such a complaint would have had to have been filed by 1995 in Pennsylvania . . . [t]herefore, in Pennsylvania this case has, in fact, wholly expired."); Id. Ex. R at 6 ("In Pennsylvania, periods of limitation

in a criminal malpractice action begin to run at the time the attorney-client relationship is terminated . . . Jasin's claims are time-barred under Pennsylvania law.") (both citing Bailey v. Tucker, 533 Pa. at 253).

It is clear that had the Wisconsin courts dismissed Mr. Jasin's claim on the basis of the Wisconsin statute of limitations, the parties' arguments on the res judicata effect of the dismissal would be apposite. The relevant issue would be whether Wisconsin treats a dismissal on statute of limitations grounds as extinguishing the cause of action totally, or instead treats it only as foreclosing the possibility of obtaining a remedy in that forum. See Reinke v. Boden, 45 F.3d 166, 169 (7th Cir. 1995) ("Statutes of limitations traditionally have been characterized as falling into one of two categories. Some statutes of limitations are considered an integral part of the cause of action; when the statute of limitations runs, the cause of action is extinguished . . . The second . . . type . . . does not extinguish the cause of action upon the running of the limitations period; only the possibility of obtaining a remedy in that forum is gone.")

The situation here is unique: the plaintiff has challenged, in the forum state, a foreign court's prior dismissal of the action based on the forum statute of limitations. Usually, a plaintiff's claim is dismissed in a foreign state based on the foreign statute of limitations, the plaintiff then brings an identical claim in the second (forum) state, and the second state must determine whether the foreign state's judgment bars the cause of action filed in the forum.

On one hand, Mr. Jasin is correct that the Wisconsin courts' dismissal did not

purport to extinguish a Pennsylvania cause of action brought in Pennsylvania. The Wisconsin borrowing statute the courts relied on in dismissing Mr. Jasin's claim states that "if an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state." WIS. STAT. § 893.07(1). Were the Court to find that the limited scope of § 893.07(1) does not give preclusive effect to the Wisconsin decision, this would allow a fresh analysis of Jasin's claim to determine whether it is, in fact, barred by the Pennsylvania statute of limitations. This approach would subvert the purpose of res judicata, which is to prevent subsequent examination of issues already litigated. It is clear that the issue of whether Jasin's claim is barred by the Pennsylvania statute of limitations has already been litigated and determined by the Wisconsin court, which reached the same result a Pennsylvania court would.

The better approach is to follow § 1738, which requires this Court to look to the law of the place where judgment was rendered to determine its preclusive effect. Here, that is undoubtedly Wisconsin and the Wisconsin Supreme Court has stated that:

> "A statute of limitations bars good causes as well as bad ones and its application, unless the defendant's fraudulent conduct has prevented timely discovery of the wrong, has nothing to do with the equities of the suit. A statute of limitations is the expression of legislative policy that claims and controversies, whatever their merit, if not litigated promptly, be laid to rest forever."

Gamma Tau Educ. Found. v. Ohio Cas. Ins. Co., 41 Wis.2d 675, 683 (Wis. 1969); see also Atlanta Cas. Co. v. Vue, 2004 WL 2814351 at *2 (Wis.App. 2004) (citing Gamma

Tau for the proposition that "[o]nce run, a statute of limitations renders a claim extinct and bars it forever.") Strict adherence to § 1738 in this situation requires looking to Wisconsin law to determine the effect of the Wisconsin dismissal of Mr. Jasin's claim.

Under Wisconsin law, the Wisconsin action is entitled to res judicata effect and precludes subsequent litigation. The parties, Mr. Jasin and Michael Best, are the same in both actions; the Wisconsin action resulted in a prior judgment—a dismissal on statute of limitations grounds—that is on the merits; and the cause of action—professional malpractice—is identical in both. Because § 1738 requires this Court to give the Wisconsin judgment the same res judicata effect Wisconsin would give it, without exception for the grounds upon which it was issued, I find as a matter of law that Mr. Jasin's claim is barred.

**B. Is The Wisconsin Judgment Entitled to Full Faith and Credit?**

Mr. Jasin further argues that the Wisconsin judgment is not entitled to full faith and credit because the Wisconsin courts did not afford him due process.

The decision of another court receives full faith and credit and is entitled to preclusive effect under § 1738 unless "the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." Kremer, 456 U.S. at 480-81 (citing Allen v. McCurry, 449 U.S. 90, 95 (1980)). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana v. United States, 440 U.S. 147, 164, n.11 (1979).

Due process guarantees the right to notice and an opportunity to be heard. The Third Circuit has set forth the following factors as essential to due process: (1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result. Rogin v. Bensalem Twp., 616 F.2d 680, 694 (3d Cir.1980).

Mr. Jasin claims the Wisconsin circuit court's grant of summary judgment "without reaching the merits of [his] claims and without addressing Jasin's claim that Steiner's fraudulent concealment of his malpractice tolled the limitations period" was a denial of due process. The Wisconsin circuit court did not address Mr. Jasin's fraudulent concealment claim in detail, instead dismissing his action on statute of limitations grounds, as discussed above. See Def.'s Mot. For Summ. J. Ex. Q. He did not file a motion for reconsideration of the Circuit Court's decision. Instead, Mr. Jasin appealed to the Wisconsin Court of Appeals, which ruled that Mr. Jasin had failed to properly preserve the equitable estoppel issue for appeal and that it would therefore not address the issue of whether Michael Best should have been estopped from asserting the statute of limitations defense. Id. Ex. R. ¶ 11. It stated in a footnote that:

> "Even if we deem the circuit court to have implicitly rejected Jasin's estoppel claim, we would look to the circuit court's finding that upon termination of the Steiner's services, Jasin had reasonable knowledge of the probable existence of his claim. We also note than in 1999 Jasin's pro se claims for postconviction relief included the allegation that, except for one person, Steiner had not interviewed

> anyone. We would affirm the court's rejection of Jasin's estoppel claim because the inducement for delay ceased to operate long before the filing of his malpractice action and Jasin's delay thereafter was unreasonable."

Id. Mr. Jasin filed a motion for reconsideration of the Court of Appeals decision, which was denied. Id. Ex. R. Finally, he appealed the Court of Appeals decision to the Wisconsin Supreme Court, which denied his petition for review. Id. Ex. T.

Mr. Jasin does not claim that, at any stage during the Wisconsin proceedings, he lacked notice, a neutral arbiter, a means of presenting evidence, or any other means of properly representing the claims in his civil action. He claims that the courts failed to provide him a decision based on a record with a statement of reasons for the result that his fraudulent concealment claim was not granted. Pl.'s Resp. To Def.'s Mot. For Summ. J., 25. This argument is without merit and contradicts Jasin's own admission, made to the Court of Appeals in his motion for reconsideration of its decision, that it "was evident to both Jasin and [Michael Best] that the circuit court rejected Jasin's equitable estoppel argument, albeit without expressly addressing the issue in its opinion." Def.'s Reply Br. In Support of Mot. For Summ. J., Ex. U at 2.

The circuit court, in its decision, stated that it was "not disputed that Jasin knew of the causes of action that would have given rise to his claim by July of 1995"—the date two years after Mr. Jasin terminated Steiner's services. Def.'s Mot. For Summ. J., Ex. Q at 9. While Jasin may have disputed this in his pleadings, the evidence shows that Jasin did know, during the criminal trial, of Steiner's failures in his representation of Jasin.

-18-

The circuit court's failure to more closely analyze the fraudulent misrepresentation argument was not, as Jasin now contends, a failure to consider it.

There was evidence before the Wisconsin courts and now before this Court that Steiner failed in ways obvious at the time of trial adequately to represent Mr. Jasin. He stated in a 1999 letter to Judge DuBois that, "except for one person, Steiner did not interview anyone before or during trial", "Steiner did not call expert witnesses to rebut the government expert witnesses", "Steiner did not call fact rebuttal witnesses", "Steiner failed to make numerous objections", and "Steiner did not object to, or clarify for the jury, government misrepresentations" of numerous exhibits. Def.'s Mot. For Summ. J. Ex. I (8), 6, 7, 10, 12.

The circuit court's statement that Jasin "knew of the causes of action that would have given rise to his claim by July of 1995" reflects knowledge of this letter and, as Jasin recognized, was an implicit rejection of Jasin's fraudulent misrepresentation argument. The circuit court also made more explicit statements reflecting its rejection of Jasin's argument, stating that Jasin "began expressing doubts about Steiner in 1992" and that he had "denigrated the quality of Steiner's representation long before the statute of limitations ran in 1995." Def. Mot. For Summ. J., Ex. Q at 1, 8. The court of appeals also took notice of the allegations contained in this 1999 letter, reasoning that even if Jasin was granted the benefit of the doubt and found not to have known of Steiner's negligence until 1999, this would still show an unreasonable delay in the filing of his malpractice action. See id. Ex. R at 8. It would result in an expiration of the statute of

limitations in September of 2001, more than two years before Jasin filed his complaint in the Eastern District of Wisconsin.

Mr. Jasin has filed a claim in this Court nearly identical to the claim filed in Wisconsin. In an attempt to avoid the combined effect of the two year Pennsylvania statute of limitations and accrual rule, he argued to the Wisconsin circuit court, Court of Appeals, and Supreme Court for the adoption of the "exoneration rule" in Wisconsin, under which the statute of limitations on his professional malpractice claim would not have started running until August of 2002. Def.'s Mot. For Summ. J. Ex. J at 24, Ex. U, Ex. V. The Wisconsin courts rejected his arguments, and he now asks this Court to find that the Wisconsin courts denied him due process of law despite having addressed his equitable estoppel argument and providing numerous instances of appellate review. Mr. Jasin had a full and fair opportunity for appellate review and was not denied due process of law.

## IV. CONCLUSION

I will grant Michael Best's motion for summary judgment. An appropriate order follows.